UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CASTILLO,<br><br>   Plaintiff,<br><br> v.<br><br>CAROLYN COLVIN,<br><br>   Defendant. | Case No.  14-cv-03140-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR AN AWARD OF BENEFITS**<br><br>Re: Dkt. Nos. 17, 18 |

## I. INTRODUCTION

  Plaintiff Carlos Castillo seeks review of the final decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying his applications for disability insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act.  For the reasons stated below, the Court GRANTS Castillo's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, and REMANDS Castillo's claim to the Commissioner for a calculation and award of benefits consistent with this Order.[1]

## II. BACKGROUND

### A. Procedural History

  Castillo applied for disability benefits on August 24, 2010, alleging that he had been disabled since February 28, 2009 due to chronic depression, anxiety, and bipolar disorder. Administrative Record ("AR") at 19, 88, 209.  The Social Security Administration denied Castillo's claim on November 30, 2010, and affirmed the denial on reconsideration on May 27,

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court<br>Northern District of California

2011.  *Id.* at 82, 99.  Castillo requested a hearing on July 13, 2011.  *Id.* 104.  A hearing occurred via videoconference on December 18, 2012, with Administrative Law Judge David Begley (the "ALJ") presiding from Falls Church, Virginia, and Castillo and his attorney Keith Ganobsik appearing from Fort Meyers, Florida.  *Id.* at 51.  Vocational expert Ruth Horvath (the "VE") also testified from Fort Meyers.  *Id.* at 73−76.

On January 14, 2013, the ALJ issued a decision denying benefits, finding that Castillo was not disabled as defined by the Social Security Act.  *Id.* at 30.  Based upon the claimant's residual functional capacity and the testimony of the vocational expert at the hearing, the ALJ determined that Castillo was unable to perform his past relevant work as a car salesman, but was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id.* at 29−30.  The ALJ's decision became final for purposes of judicial review when the Social Security Administration Appeals Council declined review on May 8, 2014.  *Id.* at 1−2.

Castillo filed this action on July 10, 2014 under 42 U.S.C. § 405(g), which gives the Court jurisdiction to review the final decision of the Commissioner.  The parties have filed cross motions for summary judgment, and Castillo has also filed a Reply to the Commissioner's Motion, pursuant to Local Rule 16-5.  *See generally* Pl.'s Mot. (dkt. 17); Def.'s Mot. (dkt. 18); Pl.'s Reply (dkt. 19).  This action was reassigned to the undersigned magistrate judge on August 20, 2014, after the parties consented to the jurisdiction of a United States magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).  *See* dkts. 9−13.

**B.    Castillo's Background**

**1.    Personal History**

Castillo testified at the administrative hearing that he was born on November 24, 1963.[2] AR at 54−55.  He was about 45 years old as of February 28, 2009, the alleged onset date of his

---

[2] There was some confusion at the hearing about Castillo's birth date due to some of his medical records indicating he was born either November 24 or 25, 1963 or 1964 (*see*, e.g., AR 241, 273, 321, 333, 356) and because Castillo testified he was 48 years old, while the birthdate he testified to would make him 49.  The ALJ stated he would accept 1963 as the correct birth year after Castillo produced his driver's license.  *Id.* at 54−55.  The ALJ's Decision, however, still notes November 24, 1964 as Castillo's date of birth.  *Id.* at 29.  A copy of Castillo's driver's license in the Administrative Record lists his date of birth as November 25, 1964.  *Id.* at 540.

disability.

Castillo graduated high school and completed one or two years of college.  AR at 29, 59, 528 (indicating completion of two years of college); *see also id.* at 210 (Disability Report-Adult, reflecting that Castillo's highest grade of school completed was one year of college, which he completed in 1986).  His employment history indicates that he held over thirty jobs from 1995 through 2011, usually as a car salesman.  *Id.* at 182−202.  He was also unemployed for several substantial stretches, including all of 2005, 2006, 2008, and 2010.  *Id.* at 188−89.  As of the date of his hearing, he had last worked as a car salesman, earning $10,123.75 in 2010.  *Id.* at 189

### 2.  Medical History

#### a.  History of Stroke, Hypertension, and Obesity

On January 2, 2011, Castillo was admitted into the emergency room at Peace River Regional Medical Center complaining of numbness and weakness in his right leg, chest pain, and his "head dragging since morning."  *Id.* at 357.  An MRI revealed he had suffered an Ischemic Cerebrovascular Accident, also known as a stroke.  *Id.*  The hospital also found he had uncontrolled hypertension, treated him with Heparin, Plavix, and Aspirin, and discharged him two days later.  *Id.*  Castillo had previously been treated for high blood pressure problems at Charlotte County Health Department in 2010.  *Id.* at 309−24.

The ALJ noted in his decision that Castillo was obese, according to the National Institute of Health's Body Mass Index, standing 5 foot 7 inches tall and weighing 217 pounds.  *Id.* at 27.  At the hearing, Castillo testified that he weighed 230 pounds, but that his weight fluctuates from 180 to 230 pounds.  *Id.* at 55.

#### b.  Mental Impairments and Medical Evaluations

The Administrative Record indicates that Castillo's mental impairments include chronic depression, bipolar disorder, and anxiety disorder.  Although Castillo's hypertension is discussed separately above, it is related to his anxiety, as physical or mental stress can trigger chest pains and panic attacks.  *See id.* at 216−18 (Pain Questionnaire).

Castillo reports he began treatment for depression, anxiety, and bipolar disorder in 2000, after suffering his first panic attack while "under a significant amount of stress" at work.  *Id.* at

United States District Court
Northern District of California

1    527.  He began experiencing mood swings, but does not know the specific cause, only that "one

2    day [he] woke up and lost interested [sic] in everything and did not want to cope with things."  *Id.*

3          The Administrative Record indicates that Castillo received a psychiatric evaluation and

4    regular medication management through Charlotte Behavioral Health Care, Inc. ("CBHC") from

5    late 2011 through the date of the hearing.  *See id.* at 576−619.  Additionally, he underwent three

6    psychological evaluations at the request of the state's Disability Determination Services ("DDS")

7    in connection with his application for disability benefits, and some of his symptoms were assessed

8    by consulting psychiatrists.  *Id.* at 304−07, 324−31, 526−31.  Castillo also received a physical

9    examination by a consulting physician at the request of DDS.  *Id.* at 533−38.

10                          i.   Evaluation by Dr. David Starr

11         Castillo's first evaluation requested by DDS, by Dr. David Starr, Ph.D., a licensed

12   psychologist, took place on April 21, 2009.  *See id.* at 304−07.  DDS requested that Dr. Starr

13   evaluate Castillo's "psychological functioning with particular regard to chronic depression,

14   anxiety, Bipolar Disorder, suicidal ideation, and mania and the extent to which those difficulties

15   may contribute to his overall ability to work."  *Id.* at 304.  Castillo reported to Dr. Starr that he had

16   a problem with depression, that he had two to three panic attacks per week, and that he had

17   problems controlling his anger.  *Id.* at 305.  Additionally, Castillo stated that he was often angry

18   and sad, had been fired many times for "anger and not getting along with co-workers," and he was

19   recently divorced as a result of his anger and frustration.  *Id.* at 304−05.  Castillo also reported

20   auditory hallucinations—hearing voices saying, for example, "I'm no good and worthless."  *Id.*

21   He had a history of self-mutilation—cutting and burning himself—and had thoughts of killing

22   himself, but reported that he had not actually attempted or planned committing suicide.  *Id.*

23   Castillo specifically denied symptoms of sleep loss, racing thoughts, and euphoria.  *Id.* at 307.

24         Dr. Starr diagnosed Castillo with Bipolar I Disorder as well as a "rule out" diagnosis of

25   Borderline Personality Disorder.  *Id.* at 306.  Castillo's mental status exam revealed "a well

26   oriented gentlemen who had . . . extreme difficulty focusing and paying attention."  *Id.* at 307.  Dr.

27   Starr assessed Castillo with a highest Global Assessment of Functioning ("GAF") in the past year

28   of 50 based on the American Psychiatric Association's Diagnostic and Statistical Manual of

United States District Court
Northern District of California

4

Mental Disorders (4th ed. text rev. 2000) ("DSM-IV-TR"), indicating serious symptoms or impairment.[3]  *Id.*  Specifically, Dr. Starr noted "severe symptoms of impairment in social functioning related to irritability, flat affect, anhedonia, impaired concentration and attention, auditory hallucinations, self mutilation, [and] relationship instability."  *Id.*  He noted that Castillo had "significant problems with mood and character structure," and that Castillo was "angry and depressed most of the time."  *Id.*  Dr. Starr recommended that Castillo be treated for mood disorder and problems with character structure, and opined that he was "capable of handling such funds as might be granted by the Social Security Administration."  *Id.* at 307−08.

ii.   Evaluation by Dr. Kenneth A. Visser

Castillo's second psychological evaluation took place on October 25, 2010, with Dr. Kenneth Visser, Ph.D., a clinical psychologist.  At that time, Castillo was on medication for depression (Paxil) and hypertension (Lisinopril and Hydrochlorothiazide), along with medication to reduce the risk of heart disease and to treat a tooth infection.  *Id.* at 327.  Regarding the Activities of Daily Living ("ADLs"), Dr. Visser noted that Castillo's "only major problem is that he becomes uptight if he is in a store for very long."  *Id.*  Castillo "denied having physical problems that interfere with his ability to function."  *Id.*  However, Castillo said that he did not drive at this time and he had panic attacks that could occur at any time, including one that occurred three days before Dr. Visser's evaluation.  *Id.* at 326, 328.  Castillo also reported that for the past several years he "sees things out of the corner of his eyes, and hears voices sometimes at night," and that these perceptive disorders affected him on an irregular basis.  *Id.* at 329.  Dr. Visser observed during the evaluation that "Castillo's mood was depressed and his affect was anxious."  *Id.* at 328.  Castillo said that at times he felt severe depression, but at other times experienced euphoric episodes.  *Id.* at 329.

---

[3] The GAF scale ranges from a rating of 0 to 100, and is divided into ten ranges which consider the overall effects of mental illness on a patient's ability to function.  *See* DSM-IV-TR at 34.  A GAF of 41-50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* The DSM-IV-TR was the edition in effect at the time of Castillo's various evaluations and is therefore referenced throughout this Order, although it has since been superseded by the DSM-5.

1    Dr. Visser gave Castillo a series of tests assessing Castillo's cognitive abilities.  *See id.* at

2    329.  Although Castillo was able to understand and follow the instructions given during the

3    interview, he had problems concentrating, as evidenced by "his inability to repeat digits backward

4    and his difficulty doing serial three subtractions."  *Id.* at 330.  Dr. Visser also noted that the fact

5    that Castillo remembered two out of the three words that he was asked to remember "actually adds

6    credibility to the evaluation" because it "suggests he attempted to put forth effort."  *Id.*

7    Dr. Visser diagnosed Castillo with "Bipolar Disorder, depressed with Psychotic Features."

8    *Id.* at 330.  Regarding work pressure and changes, Dr. Visser concluded that "Mr. Castillo would

9    have difficulty handling work pressure at this point.  His complaints suggest that he has not

10   reached maximum therapeutic results."  *Id.* at 331.  Dr. Visser also assessed Castillo with a GAF

11   of 55.[4]  *Id.*

12                          iii.  Evaluation by Dr. Shana Stowitzky

13   Castillo's third psychological evaluation took place on May 3, 2011 with Dr. Shana

14   Stowitzy, Psy.D. a postdoctoral resident, under the supervision of Dr. Claudia Zsigmond, Psy.D., a

15   licensed psychologist who also met with Castillo and reviewed his test results.  *Id.* at 531.  Castillo

16   reported that though he had a driver's license, he did not drive due to concentration problems.  *Id.*

17   at 529.  Dr. Stowitzky had difficulty collecting information from Castillo as she found him

18   irritable and oppositional during the evaluation, his irritability increasing when pressed for details

19   such as how long his panic attacks lasted (he eventually responded they lasted fifteen to twenty

20   minutes).  *Id.*  Castillo also exhibited anxious behavior—deep breathing and slight rocking—when

21   asked for details about his work history or past mental health treatment and diagnoses.  *Id.*  Dr.

22   Stowitzky did not know if Castillo's oppositional and anxious behavior was due to mental illness

23   or evasiveness.  *Id.*  However, Dr. Stowitzky noted that "[h]e did not evidence symptoms of

24   psychosis, such as hallucinations, delusions, or ideas of reference."  *Id.*

25   Dr. Stowitzky analyzed Castillo's mental status using memory and concentration tests.

26

27   ────────────────

[4] A GAF of 51 through 60 corresponds to "[m]oderate symptoms (e.g., flat affect and
28   circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or
     school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR at 34.

United States District Court
Northern District of California

1  Castillo was able to recall a three-word list after a five-minute interval, after Dr. Stowitzky

2  prompted him with semantic cues, and was able to spell the word "world" forwards and

3  backwards. *Id.* at 529–30. Dr. Stowitzky found that these tests demonstrated Castillo had

4  "[a]dequate recall of recent and remote events . . . suggesting no severe short-term or long-term

5  memory impairment," and indicated "appropriate attention and concentration." *Id.*

6      Dr. Stowitzky diagnosed Castillo with Bipolar II Disorder, Anxiety Disorder NOS,

7  Hypertension, and a "rule out" diagnosis of Breathing-Related Sleep Disorder (Sleep Apnea). *Id.*

8  at 530. Dr. Stowitzky also assessed Castillo with a GAF of 58, at the "moderate" range of

9  psychological, social, and occupational functioning. *Id.* She recommended psychotherapy and a

10  reevaluation by a psychiatrist for "psychotropic medication to treat symptoms of depression and

11  anxiety." *Id.*

12          iv.  Evaluation by Dr. Neil Johnson

13      Neil Johnson, M.D., performed a physical examination of Castillo on May 14, 2011.

14  Castillo reported he stopped driving the previous year due to panic attacks, during which he felt

15  anxiety and a suffocating feeling for five to ten minutes. *Id.* at 534. Castillo's dominant hand is

16  right, but his stroke the previous year weakened his right side. *Id.* Castillo estimated he could lift

17  20 pounds on the right and 30 to 40 pounds on the left. *Id.* Dr. Johnson tested Castillo's grip

18  pinch strength and the range of motion of limbs. *Id.* at 535−39. Dr. Johnson concluded that the

19  weakness and discomfort on Castillo's right side was mild, but he "has had a one year history of

20  hypertension," and his "blood pressures remain quite elevated." *Id.* Dr. Johnson also noted

21  Castillo's emotional problems as having had "anxiety, depression and bipolar as well as panic

22  attacks," and observed that Castillo seemed slightly anxious and had flat affect. *Id.* at 538.

23          v.  Treatment and Evaluation by Nurse Practitioner Billie J. Cone and Dr.
                Matthews-Ferrari

24      On September 16, 2011, Castillo transferred to CBHC from his former provider, a Dr.

25  Olivia, whose records of Castillo are not included in the Administrative Record, and presented for

26  a psychiatric evaluation and medication management by Billie Cone, Advanced Registered Nurse

27  Practitioner. *See id.* at 549−62. Castillo informed Cone that although his medications controlled

28

United States District Court
Northern District of California

most of his symptoms, he still experienced panic attacks lasting ten to fifteen minutes and his last

manic episode was in June 2011.  *Id.* at 549.  During that manic episode Castillo heard voices

whispering "what are you doing now"; he also became angry and impulsive, and he had rapid

speech and racing thoughts.  *Id.*  Castillo stated that his depression cycles caused him to isolate

himself and that he stops shaving or getting dressed because he feels hopeless, lacking energy or

motivation.  *Id.*  He also reported having panic attacks during both depressive and manic cycles.

*Id.*  Nurse Practitioner Cone assessed Castillo as having a GAF of 52.  AR at 561.

   In June of 2012, Cone and Dr. Katina Matthews-Ferrari, also of CBHC, co-signed a letter

in support of Castillo's application for disability benefits.  *See id.* at 564-65.  The letter

summarizes Castillo's mental impairments, including severe depression with psychotic features, a

history of suicide attempts by laceration of the wrist, Bipolar 1 Disorder, Generalized Anxiety

Disorder, a recent manic episode, and panic and anxiety attacks that occur one to two times a week

lasting from ten to fifteen minutes.  *Id.* at 564.  The letter also reports that Castillo's medications

were recently increased because his hallucinations, anxiety, and panic attacks had continued

during their tenure of treatment.  *Id.* at 565  It concludes with the following opinion:

> I do not feel that mentally or physically Mr. Castillo is able to work
> full-time in competitive work.  This status has been ongoing for over
> the past year since I have been treating him, and I do not foresee
> major changes in the future.  He may require a payee if his retention
> and anxiety become worse, further impacting his ability to
> remember bills.

*Id.*[5]

### C.   The Administrative Hearing

   At the time of the hearing, Castillo lived with his second wife, Suzanna, and their three

children, two toddlers and a newborn.  *Id.* at 57.  He also has two children by his first wife,

Guadalupe, to whom he was married for sixteen years and who drove him to the hearing.  *Id.* at

58. Castillo testified he was scared to drive because he had had a stroke and also suffered anxiety

---

[5] Although signed by both Cone and Dr. Matthews-Ferrari, the letter is written in the first person singular.  Also, Cone's signature on this letter reads "Billie J. *Castillo*," although the typed version of her name below the signature line reads "Billie J. Cone."  AR at 565 (emphasis added).  Neither the ALJ nor the parties addressed this discrepancy, and it is not relevant to the Court's conclusion.

United States District Court
Northern District of California

attacks whenever he was isolated or in large crowds. *Id.* at 59, 71. Neither Castillo nor his wife had any income, but received Medicaid and EBT, and in 2011 through January of 2012 he received unemployment benefits. *Id.* at 60. When asked about his typical day, Castillo testified he "tr[ied] to stay a little bit busy" by helping his wife do chores around the house or go to the grocery store with her, but he was easily fatigued. *Id.* at 64−66. When asked if he had any hobbies to occupy his time, Castillo explained he played learning games with his children or might read or watch television to pass the time. *Id.* at 67. As to caring for his personal needs, Castillo testified he can "at times" dress and bathe himself, but when he experiences depression he stays in his room and does not get dressed or bathe. *Id.* at 66. When asked if he belonged to any groups or clubs, Castillo said he and his family went to church, but he could not sit through a service without walking around. *Id.* He also stated that he occasionally takes walks, but usually has to rest after twenty to thirty minutes. *Id.* at 70.

Castillo stated he no longer looked for work because of his poor health—his anxiety and high blood pressure were uncontrollable, and he still experienced chest pains and numbness. *Id.* In response to questions about his current health care, Castillo explained he received medication and mental health counseling through the county health department every two to four months. *Id.* at 60–61. His medication regimen included Micardis, Buspirone, Abilify, Plavix, Lamotrigine, and Divalproex. *Id.* at 62–63. When asked about the side effects of his medications, Castillo testified that he suffered headaches that "come and go just about every day" and could last up to a half hour. *Id.* at 63. Castillo testified that, although the medications help, he still suffers from anxiety attacks two to three times a week and—most significantly for the purpose of this Order— he experiences episodes of depression once or twice every two weeks that cause him to stay in his bedroom up to twenty days at a time. *Id.* at 69−70. Castillo described his anxiety attacks as causing difficulty breathing, blurry vision, profuse sweating, and a "panicky" feeling. *Id.* at 71. He testified that these anxiety attacks were triggered when he was in large crowds or at the grocery store with his wife. *Id.* Castillo also stated that in small rooms or confined spaces he feels both fatigue and anxiety, starts shaking, and has to step outside for air, and that he becomes anxious after sitting still for long periods of time, and needs to move around. *Id.* at 68, 72. He

9

1    also testified that he has not used alcohol since he was in high school and has never smoked. *Id.* at

2    70.

3           The VE also testified at the hearing, stating that, despite the variety of jobs in Castillo's

4    work history, only his past employment as an "automobile sales person" rose to the level of

5    "substantial gainful activity." *Id.* at 73−74. The VE testified that a person with various

6    impairments listed by the ALJ could no longer perform Castillo's past work, which had a specific

7    vocation preparation ("SVP") rating of 6, but could work in a certain occupations with an SVP of

8    2, including as a merchandise marker, mail sorter, or a hand packager. *Id.* at 74−75. When the

9    ALJ asked how many absences these occupations would allow, the VE explained that these types

10   of occupations only allowed six to seven absences a year, and that a person who was consistently

11   absent once a month would not be able to maintain employment "at any level." *Id.* at 75.

12   Additionally, after Castillo's attorney asked whether a person could keep a job if he or she needed

13   to leave the work space due to anxiety for fifteen to twenty percent of the day, the VE stated that

14   anything above ten to fifteen percent would not be acceptable. *Id.* at 75−76.

15          **D.    The ALJ's Analysis and Findings of Fact**

16                 **1.    Legal Standard for Determination of Disability**

17                        a.   <u>Five-Step Analysis</u>

18          A claimant is eligible for disability insurance benefits under the Social Security Act if he is

19   unable "to engage in any substantial gainful activity by reason of any medically determinable

20   physical or mental impairment which can be expected to result in death or which has lasted or can

21   be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

22   *see also id.* § 423(a)(1). The claimant is only found disabled if "his physical or mental

23   impairments are of such severity that he is not only unable to do his previous work but cannot,

24   considering his age, education, and work experience, engage in any other kind of substantial

25   gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The claimant bears the

26   burden of proof in establishing a disability. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

27          The Social Security Regulations establish a five-step sequential evaluation process to

28   determine whether a claimant is disabled within the meaning of the Social Security Act. *Tackett v.*

United States District Court
Northern District of California

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The burden of proof is

on the claimant for steps one through four, but shifts to the Commissioner at step five.  *Id.*  "If a

claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to

consider subsequent steps."  *Id.*

     At Step One, the ALJ considers whether the claimant is engaged in "substantial gainful

activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he is, the ALJ finds that the claimant is not disabled,

regardless of his medical condition or age, education, and work experience.  *Id.* § 404.1520(b).  If

the claimant is not engaged in substantial gainful activity, the ALJ proceeds to Step Two and

considers whether the claimant has "a severe medically determinable physical or mental

impairment," or combination of such impairments, which meets the duration requirement in 20

C.F.R. § 404.1509 (unless the impairment is expected to result in death, it must have lasted or

must be expected to last for a continuous period of at least 12 months).  An impairment is severe if

it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.*

§ 404.1520(c).  If the claimant does not have a severe impairment, disability benefits are denied at

this step.  If it is determined that one or more impairments are severe, the ALJ will continue to

Step Three of the analysis, comparing the medical severity of the claimant's impairments with a

compiled listing of impairments that the Commissioner has found to be disabling.  *Id.*

§ 404.1520(a)(4)(iii) & Subpart P, App. 1.  If one or a combination of the claimant's impairments

meet or equal a listed impairment, the claimant is found to be disabled.  Otherwise, the ALJ

proceeds to Step Four and considers the claimant's residual functional capacity in light of her

impairments and whether he can perform past relevant work.  *Id.* § 404.1520(a)(4)(iv); *see also id.*

§ 404.1560(b) (defining past relevant work as "work . . . done within the past 15 years, that was

substantial gainful activity, and that lasted long enough for you to learn to do it").  If the claimant

can still perform past relevant work, he is found not to be disabled.  *Id.* § 404.1520(a)(4)(iv)  If the

claimant cannot perform past relevant work, the ALJ proceeds to the fifth and final step of the

analysis.  *Id.* § 404.1520(a)(4)(v).  At Step Five, the burden shifts to the Commissioner to show

that the claimant, in light of his or her residual functional capacity.  *Id.* § 401.1520(f); *Tackett*, 180

F.3d at 1098.  A claimant who is able to perform other jobs that are available in significant

United States District Court
Northern District of California

numbers in the national economy is not considered disabled, and will not receive disability

benefits.  20 C.F.R. § 404.1520(a)(4)(v), (f).  Conversely, where there are no jobs available in

significant numbers in the national economy that the claimant can perform, the claimant is found

to be disabled.  *Id.*

b.  Analysis of Mental Impairment

Where there is evidence of a mental impairment that allegedly prevents a claimant from

working, the Social Security Administration has supplemented the five-step sequential evaluation

process with additional regulations to assist the ALJ in determining the severity of the mental

impairments at steps two and three of the disability evaluation.  *Maier v. Comm'r of Soc. Sec.*, 154

F.3d 913, 914-15 (9th Cir. 1998) (per curiam) (citing 20 C.F.R. § 416.920a).  These regulations

provide a method for evaluating a claimant's pertinent symptoms, signs, and laboratory findings to

determine whether the claimant has a medically determinable mental impairment.  20 C.F.R.

§ 404.1520a(a).  In conducting this inquiry, the ALJ must consider all relevant and available

clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the

claimant's functioning may be affected by factors including, but not limited to, chronic mental

disorders, structured settings, medication, and other treatment.  The ALJ must then assess the

degree of the claimant's functional limitations based on the individual's impairments.  20 C.F.R.

§ 404.1520a(c)(2).

Although analysis under 20 C.F.R. § 404.1520a includes an assessment of the individual's

limitations and restrictions, this is not a residual functional capacity assessment but rather a

component of analyzing the severity of mental impairments at Steps Two and Three of the

sequential evaluation process.  SSR 96-8p, 1996 WL 374184.  The mental residual functional

capacity assessment used at Steps Four and Five requires a more detailed assessment in which the

ALJ must address the various functions contained in the broad categories found in Paragraph B of

the adult mental disorders listed in 12.00 of the Listing.  *Id.*  The listings that are relevant to

Castillo's claimed mental disabilities are 12.04 and 12.06.

Disorders related to depression are governed by Listing 12.04, for affective disorders.  That

listing provides in relevant part:

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.   Medically documented persistence, either continuous or intermittent, of one of the following:

   1. Depressive syndrome characterized by at least four of the following:

      a. Anhedonia or pervasive loss of interest in almost all activities; or

      b. Appetite disturbance with change in weight; or

      c. Sleep disturbance; or

      d. Psychomotor agitation or retardation; or

      e. Decreased energy; or

      f. Feelings of guilt or worthlessness; or

      g. Difficulty concentrating or thinking; or

      h. Thoughts of suicide; or

      i.  Hallucinations, delusions, or paranoid thinking;  or

   [subpart A.2 discusses symptoms of manic syndrome]

   3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

   1. Marked restriction of activities of daily living; or

   2. Marked difficulties in maintaining social functioning; or

   3. Marked difficulties in maintaining concentration, persistence, or pace; or

   4. Repeated episodes of decompensation, each of extended duration;

13

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Listing 12.06, for anxiety-related disorders, provides as follows:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and

14

sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

*Id.* Where the listings refer to "marked" limitations, "it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* at 12.00C.

### 2.  The ALJ's Five-Step Analysis

#### a.  Step 1: Substantial Gainful Activity

The ALJ began his evaluation by noting that Castillo worked after the alleged disability onset date, but determined that "this work activity did not rise to the level of substantial gainful activity." AR at 21. The ALJ also noted, before moving on to the second step, that Castillo had received unemployment benefits through 2011 and had not engaged in substantial gainful activity since February 28, 2009.

#### b.  Step 2: Severe Impairments

In Step Two, the ALJ found Castillo at all material times has had severe psychological and

1   physical impairments, in combination if not singly, of "bipolar disorder, anxiety disorder,

2   hypertension, obesity, and status post mild cerebrovascular accident."  AR at 21.

3               c.  Step 3: Medical Severity

4           In Step Three, the ALJ found Castillo's impairments do not meet or equal the severity any

5   listed impairment because the "paragraph B" criteria are not satisfied, and "disability cannot be

6   established on the medical facts alone."  *Id.* at 22.

7           According to the ALJ, Castillo had no marked restriction of daily living because Castillo

8   reported being able to perform a wide variety of them "including caring for his personal needs,

9   caring for his young children, and pets, and prepar[ing] simple meals."  *Id.*  The ALJ determined

10  that Castillo "has mild limitation in handling his daily activities independently, appropriately,

11  effectively, and on a sustained basis under this criterion."  *Id.* at 23.  The ALJ also determined

12  Castillo had moderate difficulties in social functioning.  *Id.*  Despite experiencing anxiety and

13  panic attacks in large crowds and difficulty getting along with others due to his mood swings,

14  Castillo "reported that he attends church, has a few friends, and uses public transportation."  *Id.*

15  For the third category (concentration, persistence, or pace), the ALJ determined that Castillo had

16  moderate difficulties due to "problems concentrating as evidenced by his inability to repeat digits

17  backward and his difficulty doing serial three subtractions."  *Id.*  For the fourth category, the ALJ

18  determined that Castillo had experienced no extended episodes of decompensation.  *Id.*  Finally,

19          The ALJ also found that Castillo did not meet the "C" requirement under Listing 12.04 or

20  12.06, which require, respectively, "repeated episodes of decompensation, or a residual disease

21  process, or an inability to function outside a highly supported environment;" or, "a complete

22  inability to function independently outside the area' of one's home."  *Id.*  Because the ALJ did not

23  find Castillo disabled at Step 3, he proceeded to Step 4.

24              d.  Step 4: Residual Functional Capacity and Ability to Perform Past Work

25          At Step Four, The ALJ concluded that Castillo "has the residual functional capacity to

26  perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following

27  exceptions:

28

United States District Court
Northern District of California

1    the claimant is unable to climb ladders, ropes or scaffolds; is limited
     to occasional climbing of ramps and stairs, balancing, stooping,
2    kneeling, crouching, and crawling; is limited to frequent fingering
     and handling with the right dominant hand; must avoid concentrated
3    exposure to extreme heat and cold; must avoid concentrated
     exposure to hazardous machinery and unprotected heights; is limited
4    to performing simple, routine, repetitive tasks in a low stress job,
     defined as having no fixed production quotas or hazardous
5    conditions with only occasional decision making required, and only
     occasional changed in the work setting; and the claimant is limited
6    to only occasional interaction with coworkers, supervisors and the
     general public.

7    AR at 24.  Based on these findings and the testimony of the VE, the ALJ concluded Castillo was

8    unable to perform his past relevant work as a car salesman.  AR at 29.  Although the ALJ found

9    that Castillo's medically determinable impairments could reasonably be expected to cause the

10   alleged symptoms, he did not find Castillo's statements concerning the intensity, persistence and

11   limiting effects of these symptoms "entirely credible."  *Id.* at 25.[6]  Additionally, the ALJ found

12   that the "medical findings do not support the existence of limitations greater than the above listed

13   residual functional capacity."  *Id.*

14        At the hearing, the VE testified that a person with the impairments listed by the ALJ would

15   be unable to perform Castillo's past relevant work.  *Id.* at 74.  The ALJ relied on that testimony in

16   his decision.  *Id.* at 29.  After determining that Castillo was unable to perform past relevant work,

17   the ALJ continued to Step 5.

18             e.   Step 5: Ability to Perform Other Jobs in the National Economy

19        At Step Five, again relying on the testimony of the VE, the ALJ concluded that jobs exist

20   in significant numbers in the national economy that Castillo is able to perform, such as

21   merchandise marker, mail sorter, or hand packager.  *Id*. at 29−30.  Accordingly, the ALJ

22   concluded that a Castillo has not been disabled, as defined by the Social Security Act, from

23   February 28, 2009 through the date of his decision.  *Id.* at 30.

24

25   [6] The ALJ also rejected the opinions of Nurse Practitioner Cone and Dr. Matthews-Ferrari, for
     reasons including the purported facts that "the opinion indicates that they have maintained a
26   treating relationship with the claimant since 2000 [which] is not reflected in the record," and that
     "Dr. Matthews-Ferrari does not specialize in mental health treatment."  AR at 28.  The Court does
27   not reach the issue of whether the ALJ erred in declining to credit their opinions, but notes that
     (1) although the letter indicates that Castillo first sought mental health treatment in 2000, it
28   explicitly states that the authors have treated him only "over the past year," AR at 565; and (2) the
     ALJ cited no evidence for his assessment of Dr. Matthews-Ferrari's specialization.

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### E.   Motions for Summary Judgment

#### 1.   Castillo's Motion for Summary Judgment

Castillo filed a complaint seeking review of the ALJ's decision by this Court, and moved for summary judgment on the grounds that, first, the ALJ's adverse credibility finding as to Mr. Castillo is not supported by substantial evidence; second, the ALJ failed to consider all of Mr. Castillo's impairments in combination; and third, the ALJ failed to give proper weight to the opinions of the treating and examining psychologists.

First, Castillo contends that "the ALJ's adverse credibility finding as to Mr. Castillo is not supported by substantial evidence." Pl.'s Mot. at 6 (capitalization altered throughout). Castillo argues that the ALJ erred in deciding that the objective medical evidence "cannot be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged." *Id.* (quoting AR at 25). Castillo relies on *Light v. Social Security Administration*, 119 F.3d 789 (9th Cir. 1997), where the 9th Circuit ruled that an ALJ may not discredit a claimant's testimony regarding the severity of subjective symptoms, particularly pain, on the basis that the objective medical evidence does not support the claimant's testimony. Pl.'s Mot. at 6 (citing *Light*, 119 F.3d at 792−93). Castillo quotes the Ninth Circuit's holding in that case that "to find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." *Id.*

Castillo also contends that "the ALJ's assertion that Mr. Castillo's activities of daily living detract from his credibility ignores . . . voluminous evidence that his activities were severely limited by his impairments." Pl.'s Mot. at 6. Castillo argues that the 9th Circuit does not expect a claimant to "vegetate in a dark room to be deemed eligible for benefits," or "be penalized for attempting to maintain some sense of normalcy in her life." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

Second, Castillo contends that "the ALJ gave no consideration at all to many of Mr. Castillo's impairments." Pl.'s Mot. at 7. Castillo points to the fact that, while the ALJ did "briefly" mention Castillo's hypertension, "there is no discussion of its effect on his dissecting

thoracic aorta, or the fact that high blood pressure is extremely dangerous for stroke victims." *Id.*
(citing AR at 581) (citation and footnote omitted).  Castillo cites information from the National
Library of Medicine as evidence that aortic dissections can lead to aortic rupture or decreased
blood flow (ischemia) to organs, and from the American Heart Association to show that high
blood pressure cause weakened arteries in the brain, which "put you at much higher risk for
stroke." *Id.*  Castillo argues that the ALJ failed to properly consider the combined risk of
Castillo's dissecting aortic aneurysm, history of stroke, and uncontrolled hypertension, which
"precluded substantial gainful activity on a sustained basis." *Id.* at 8.

Third, Castillo disputes the ALJ's decision to give "greater weight to the non-examining
state agency consultants" over the opinions of the examining and treating medical sources.  *Id.*
Castillo asserts that the ALJ's "only explanation for the weight given the non-examining
consultants is the conclusory 'they are consistent with the evidence as a whole' and the
unsupported allegation that 'there exist a number of other reasons to reach similar conclusions (as
explained throughout this decision).'"  *Id.*  (quoting AR at 28) (citation omitted).  Castillo
contends that "every psychological source who actually saw Mr. Castillo agreed that he had
serious mental impairments as a result of medically determinable mental health conditions."  *Id.*
Castillo argues that, under the credit as true doctrine, the opinions of the treating and examining
mental health provisions "should be accepted and the case remanded for an award of benefits."  *Id.*
(citations omitted).

### 2.  Commissioner's Motion for Summary Judgment

The Commissioner has filed a Cross-Motion for Summary Judgment, asking the Court to
affirm the ALJ's final decision that Castillo was not disabled.  The Commissioner responds to
each of Castillo's arguments individually.  The Commissioner argues that "the ALJ properly
evaluated [Castillo's] credibility" because Castuillo's allegations of impairment were not
consistent with the objective medical evidence, his activities of daily living, the opinions of the
state agency medical consultants, and his acceptance of unemployment benefits, which required
him "to certify that he was ready and willing to work."  Def.'s Mot. at 3−6.

First, the Commissioner states that a lack of medical evidence is "a factor that the ALJ can

19

1   consider in his credibility analysis," even if it cannot "form the sole basis for discounting

2   symptom testimony." *Id.* at 3-4.  The Commissioner' then tracks the ALJ's arguments of why

3   Castillo's "subjective complaints were not supported by the medical evidence," by comparing the

4   mental exam findings of the three psychiatric evaluations completed at the request of DDS to

5   Castillo's allegations of disabling impairments.  *Id.* at 4.  The Commissioner points to Dr. Starr's

6   and Dr. Visser's reports that Castillo was attentive, cooperative, had clear speech, had adequate,

7   coherent, relevant verbal production, preserved judgment, and easily made eye contact.  *Id.*  The

8   Commissioner next notes that during Dr. Shana Stowitzky's evaluation, while Castillo was not

9   cooperative, Castillo "had adequate recall of recent and remote events, suggesting no severe

10  memory impairment, was able to spell 'world' forwards and backwards indicating appropriate

11  attention and concentration, and his thought processes were goal-directed, logical, and coherent."

12  *Id.*  The Commissioner also points out that during the evaluations in September 2011 and October

13  2012, although Castillo reported worsening symptoms, he was attentive, cooperative, pleasant, had

14  good insight and judgment, had a good memory (though his concentration was impaired), and

15  made good eye contact.  *Id.* at 4−5.  Based on these "inconsistencies," the Commissioner argues

16  that "the ALJ properly found that [Castillo's] mental status examination findings did not support

17  [his] allegations of disabling mental impairment."  *Id.* at 5.

18      The Commissioner also notes that the ALJ considered Castillo's physical limitations

19  "unremarkable," as Dr. Neil Johnson found Castillo had only mild difficulties getting off the exam

20  table and "only very mild weakness in his right lower and upper extremities, and intact sensation."

21  *Id.*  The Commissioner argues that the ALJ reasonably determined that these physical examination

22  findings do not indicate that Castillo has significant functional limitations due to his hypertension

23  and stroke.  *Id.*

24      Second, the Commissioner supports the ALJ's adverse credibility finding with respect to

25  Castillo's alleged level of impairment based on Castillo's activities of daily living.  The

26  Commissioner notes that Castillo "cared for his personal needs, used public transportation,

27  attended church, did some housework, occasionally helped care for his young children, shopped,

28  read, and watched television."  *Id.*  The Commissioner quotes *Molina v. Astrue*, 674 F.3d 1104,

1    1113 (9th Cir. 2012), stating that "even where those activities suggest some difficulty functioning,

2    they may be grounds for discrediting the claimant's testimony to the extent that they contradict

3    claims of a totally debilitating impairment." *Id.*

4        Third, the Commissioner argues that the ALJ's adverse credibility finding is properly

5    supported by the state agency medical consultant opinions. *Id.*  The Commissioner points to state

6    agency psychologist Gary Buffone's opinion, and state agency psychologist Eric Weiner's

7    subsequent agreement with Buffone's opinion, that Castillo "remained capable of carrying out

8    simple instructions and tasks, could interact appropriately on a limited basis." *Id.* at 6 (citing AR

9    at 337−53, 532).  The Commissioner also notes that state agency physician Robert Steele opined

10   that physically, Castillo could perform some light work. *Id.* (citing AR at 541−48).  The

11   Commissioner argues that these opinions support the ALJ's finding that Castillo was not disabled.

12   *Id.*

13       Fourth, the Commissioner notes that Castillo received unemployment benefits which

14   would, according to the California Employment Development Department, require Castillo "to

15   certify that he was ready and willing to work." *Id.*  The Commissioner cites *Molina v. Astrue*, 674

16   F.3d 1104, 1112 (9th Cir. 2012), stating that the "ALJ may consider inconsistencies between a

17   claimant's statements and conduct." *Id.*

18       Next, the Commissioner addresses whether the ALJ failed to consider combined effects of

19   Castillo's impairments, including his stroke and high blood pressure, "without regard to whether

20   any such impairment, if considered separately, would be of sufficient severity to find Castillo

21   disabled. *Id.* at 6−7.  The Commissioner points out that the ALJ discussed Castillo's stroke and

22   hypertension and found them severe impairments, but also found that they did not result in

23   disabling limitations because Castillo was prescribed medication his high blood pressure and

24   "there was no 'physical or diagnostic findings' to support a finding of disability following his

25   stroke." *Id.* at 7 (quoting AR at 25).  The Commissioner also argues that the ALJ properly relied

26   on Dr. Johnson's observation that Castillo only had mild weakness and discomfort on his right

27   side, as well as consultant Dr. Steel's conclusion that Castillo "could still perform a modified

28   range of light work." *Id.*  The Commissioner argues that Castillo has the burden to show how the

United States District Court
Northern District of California

21

United States District Court
Northern District of California

1  ALJ failed to account for these physical impairments, and has failed to meet this burden. *Id.* at 8

2  (citing *Burch v. Burnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

3       Next, the Commissioner contends that "the ALJ properly evaluated the opinion evidence"

4  from the consulting physicians and that the "ALJ need not accept the opinion of any physician if it

5  is brief, conclusory, and inadequately supported by clinical evidence." *Id.* (citing *Thomas v.*

6  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).  According to the Commissioner, the ALJ properly

7  rejected Nurse Practitioner Cone's and Dr. Matthews-Ferrari's opinion that Castillo was unable to

8  mentally or physically perform full-time competitive work, based on their infrequent treatment

9  and inconsistency with Castillo's reported activities. *Id.* at 9.  The Commissioner argues that

10 Castillo's treatment records "do not show that he had any disabling limitations" and Dr.

11 Matthews-Ferrari "did not provide any objective findings to support her opinion." *Id.*  The

12 Commissioner finally contends that the ALJ properly gave greater weight to the state agency

13 opinions because "they were consistent with the evidence as a whole." *Id.* at 10.  The

14 Commissioner argues that, "should this Court determine the ALJ erred however, it should not

15 'credit as true' Dr. Matthews-Ferrari's opinion because the evidence including several medical

16 opinions create serious doubt that Plaintiff is disabled." *Id.*

17               **3.  Castillo's Reply**

18       Castillo filed a Reply in which he argues that (1) the Commissioner's Motion "fails to

19 justify the ALJ's rejection of Mr. Castillo's credibility;" (2) that the ALJ's decision failed to

20 consider all of Castillo's impairments; and that (3) "the ALJ improperly ignored the opinions of

21 treating mental health professionals." *See* Pl.'s Reply (dkt. 19).

22 **III.   ANALYSIS**

23       **A.   Legal Standard Under 42 U.S.C. § 405(g)**

24       When reviewing the Commissioner's decision, the Court "may set aside a denial of

25 benefits only if it is not supported by substantial evidence or if it is based on legal error." *Thomas*,

26 278 F.3d at 954  (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  Substantial

27 evidence must be based on the record as a whole and is "such evidence as a reasonable mind might

28 accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

1    Substantial evidence "must be 'more than a mere scintilla,' but may be less than a preponderance."

2    *Molina*, 674 F.3d at 1110−11 (9th Cir. 2012) (quoting *Desrosiers v. Sec'y of Health & Human*

3    *Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).   In reviewing the record, the Court must consider both

4    the evidence that supports and detracts from the Commissioner's conclusion.  *Smolen v. Chater*,

5    80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

6    Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion

7    must be upheld.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing

8    *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995)).

9         Courts "are constrained to review the reasons the ALJ asserts," and "cannot rely on

10   independent findings" to affirm the ALJ's decision.  *Connett v. Barnhart*, 340 F.3d 871, 874

11   (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  If the Court identifies defects in the

12   administrative proceeding or the ALJ's conclusions, the Court may remand for further proceedings

13   or for a calculation of benefits.  *See Garrison v. Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014).

14   **B.    Castillo's Credibility**

15        Castillo contends that the ALJ erred because his adverse credibility finding as to Castillo is

16   not supported by substantial evidence.  The Commissioner responds that the ALJ properly found

17   Castillo's testimony was not credible based on the medical evidence, Castillo's activities of daily

18   living, the state agency medical consultant opinions, and because Castillo received unemployment

19   benefits.

20        **1.  Legal Standard for Subjective Symptom Testimony**

21        The Ninth Circuit has established two requirements for a claimant to present credible

22   testimony regarding subjective symptoms: "(1) [the claimant] must produce objective medical

23   evidence of an impairment or impairments; and (2) [the claimant] must show that the impairment

24   or combination of impairments could reasonably be expected to (not that it did in fact) produce

25   some degree of symptom."  *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407

26   (9th Cir. 1986)).  The claimant need not, however, produce objective medical evidence of the

27   actual symptoms or their severity.  *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 347−48 (9th Cir.

28   1991)).  If the claimant satisfies the above test and there is not any affirmative evidence of

United States District Court
Northern District of California

23

1   malingering, the ALJ "must provide 'clear and convincing' reasons to reject a claimant's

2   subjective testimony." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). "'General findings are

3   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

4   undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)

5   (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)).

6   ### 2.   The ALJ Erred in Failing to Credit Castillo's Testimony

7           The Court holds that the ALJ failed to identify sufficient reasons find that Castillo's

8   testimony as to the severity of his combined psychological and physical impairments was not

9   credible.  The ALJ properly found at Step Two, based on objective medical evidence, that Castillo

10  suffered from a number of medically determinable severe impairments: "bipolar disorder, anxiety

11  disorder, hypertension, obesity, and status post mild cerebrovascular accident." AR at 21.  As the

12  ALJ acknowledged, these impairments "could reasonably be expected," *see Smolen*, 80 F.3d at

13  1282, to cause some degree of symptoms including depression, anxiety, and fatigue.  *See* AR at

14  25.  The ALJ nevertheless determined that "the claimant's statements concerning the intensity,

15  persistence and limiting effects of these symptoms are not entirely credible for the reasons

16  explained in this decision," *id.*, relying primarily on "inconsistencies between his allegations and

17  the medical evidence," *see id.* at 28.

18          The ALJ erred by failing to "specifically identify[] what testimony is not credible." *See*

19  *Parra*, 481 F.3d at 750 (citation omitted).  Instead, he summarized several of Castillo's medical

20  evaluations, and found that the basic level of social and cognitive functioning that Castillo

21  exhibited at those evaluations "do[es] not sustain [Castillo's] allegations of disabling conditions."

22  AR at 25−28.  He concluded vaguely that Castillo "does experience some levels of pain and

23  limitations but only to the extent described in the residual functional capacity above."  *Id.* at 28.

24          Even if the Court were to overlook the ALJ's lack of specificity, the Court discerns no

25  conflict between Castillo's testimony on his medical evaluations.  The medical evidence in the

26  record indicates Castillo suffered increasingly worsening symptoms.  Each of the psychological

27  evaluations, conducted several months apart, resulted in diagnoses of bipolar disorder, anxiety

28  disorder, and/or depression.  *E.g.*, *id.* at 306, 330, 530, 559.  Castillo's medication dosages

United States District Court
Northern District of California

1    increased in 2012 due to continuing and worsening symptoms of anxiety, depression, and anger

2    problems.  *See id.* at 594.  Evidence that Castillo was cooperative, made eye contact, and was able

3    to express himself during two evaluations, as well as evidence that he was oppositional and able to

4    spell the word "world" backwards and forwards in the third evaluation, is not sufficient to

5    establish an adverse credibility finding as to the severity of his symptoms.  *Cf. id.* at 25−26

6    (apparently relying on these evaluations to conclude that Castillo's symptom testimony was not

7    credible).  Nor is there any significant conflict between, on the one hand, Castillo's ability to

8    display those basic levels of functioning at occasional evaluations and, on the other, his testimony

9    that he sporadically suffers from severe depression that keeps him from leaving his room for days

10   at a time, as well as testimony that he experiences panic attacks in crowded or isolated settings.

11   *See id.* at 66, 70.  As for physical impairment, Castillo's abilities to get on an examination table,

12   hop on one foot, and manipulate small objects, *see id.* at 26 (summarizing Dr. Johnson's

13   evaluation), have little if any bearing on whether, as Castillo testified, he experienced fatigue after

14   twenty to thirty minutes of light physical activity.  *See id.* at 68; *see also id.* at 66 (testimony that

15   Castillo "get[s] fatigued very hard" after a "little bit of sweeping [and] vacuuming," and must stop

16   to rest).

17          The Commissioner also argues that the ALJ's adverse credibility finding is supported by

18   inconsistencies between, on the one hand, Castillo's symptom testimony and, on the other hand,

19   Castillo's activities of daily living and his receipt of unemployment benefits.  Def.'s Mot. at 5−6.

20   While the Commissioner is correct that the ALJ noted both Castillo's activities and unemployment

21   benefits in his decision, *id.* (citing AR at 21, 25), the ALJ did not discuss either of those issues in

22   the context of Castillo's credibility or present them as reasons for an adverse credibility finding.

23   *See id.* at 25−28 (identifying only the purported inconsistency between Castillo's testimony and

24   various medical evaluations as reasons for discounting Castillo's credibility).  As the

25   Commissioner is well aware, the Court is "constrained to review the reasons the ALJ asserts" for

26   an adverse credibility finding, and "may not take a general finding . . . and comb the

27

28

United States District Court
Northern District of California

1   administrative record to find specific conflicts." *Burrell*, 775 F.3d at 1183.[7]

2          Although the Court therefore need not address these arguments further, the Court notes

3   that there is no apparent conflict between Castillo's reported activities around the house—e.g.,

4   playing learning games with his children and occasionally dressing and bathing himself and

5   helping with cleaning, AR at 64−66—and his testimony regarding his periodic depression, panic

6   attacks, and fatigue.  The case on which the ALJ primarily relies is distinguishable, as that case

7   dealt with a claimant who alleged "inability to tolerate even minimal human interaction," which

8   the court found inconsistent with activities that included "walking her two grandchildren to and

9   from school, attending church, shopping, and taking walks."  *See Molina*, 674 F.3d at 1113; Def.'s

10  Mot. at 5 (citing *Molina*).  Castillo has not made that sort of sweeping allegation here.

### 3.  Castillo's Testimony Must Be Credited as True

12          The Ninth Circuit has long held that courts must credit either testimony from a claimant or

13  a medical opinion as true, and remand for a calculation and award of benefits, if three conditions

14  are met:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

18  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  Unless a court determines that "the

19  record as a whole creates serious doubt that a claimant is, in fact, disabled," failure to remand for

20  benefits when these elements are satisfied is an abuse of discretion.  *Id.* at 1021.

21          The present case requires an award of benefits under this standard.  As discussed above,

22  the ALJ "failed to provide legally sufficient reasons for rejecting" Castillo's symptom testimony.

23  *See id.*  Further, the record is fully developed, at least as is relevant to reaching a decision, and the

24  ALJ would be required to find Castillo disabled if his symptom testimony were credited.

25  _____

26  [7] The ALJ's assertion that Castillo was not credible "for the reasons explained in this decision"
    could, perhaps, be interpreted as encompassing all of the facts discussed in the decision, even
27  those that the ALJ did not specifically cite as a basis for discrediting Castillo.  *See* AR at 25.
    Respecting the Ninth Circuit's holding that "[t]he ALJ must state specifically which symptom
    testimony is not credible and what facts in the record lead to that conclusion," the Court declines
28  to adopt such an interpretation.  *See Smolen*, 80 F.3d at 1284; *see also Burrell*, 775 F.3d at 1183.

United States District Court
Northern District of California

1    The ALJ ruled in Castillo's favor at Steps 1 and 2, finding that Castillo had not engaged in

2    substantial gainful activity after his alleged onset date, and that he had severe medically

3    determinable impairments, including bipolar disorder.  AR at 21.  The Commissioner does not

4    challenge those decisions, and Castillo does not challenge the ALJ's decision at Step 3 that his

5    impairments did not meet or equal a listed impairment.  At Step 4, the ALJ determined Castillo's

6    "medically determinable impairments could be expected to cause the alleged symptoms," *id.* at 25,

7    but, as discussed above, erred in failing to present specific and legitimate reasons to reject

8    Castillo's testimony regarding the severity of those symptoms.  Among that testimony was

9    Castillo's statement that *once or twice every two weeks* his depression gets to the point that he

10   does not leave his bedroom, and he "can stay like that [up] to 15 days, 20 days."  *Id.* at 70; *see*

11   *also id.* at 66 ("I'll get depression . . . and I don't do anything but stay in my room and I get

12   tremendously depression on me [sic] that I don't want to cope with anything.").  Taking that

13   limitation into account at Step 5, the record establishes that Castillo could not find work, because

14   the VE testified that someone with Castillo's other undisputed limitations and "absent on a

15   consistent basis of one time a month" would not be able to maintain employment "[a]t any level."

16   *Id.* at 75.

17   The Commissioner argues that the Court should not remand for benefits because "the

18   evidence including several medical opinions create[s] serious doubt that [Castillo] is disabled."

19   Def.'s Mot. at 10, but because the depressive episodes described in Castillo's testimony are

20   sporadic rather than constant, the Court does not find that his ability to exhibit basic social

21   functioning at various medical evaluations creates "serious doubt" that Castillo would miss work

22   at least once per month due to severe depression caused by bipolar disorder.  The Court therefore

23   REMANDS the case to the Commissioner with instructions to award benefits consistent with this

24   Order.

25   The Court does not reach the parties' remaining arguments, including Castillo's arguments

26   based on anxiety, the combined effects of his impairments, and the ALJ's treatment of the letter

27   from Nurse Practitioner Cone and Dr. Matthews-Ferrari.

28

United States District Court
Northern District of California

## IV.    CONCLUSION

For the reasons stated above, Castillo's Motion for Summary Judgment is GRANTED, the Commissioner's Motion is DENIED, and the case is REMANDED for a calculation and award of benefits consistent with this Order.  The Clerk is instructed to enter judgment for Castillo and to close the file.

**IT IS SO ORDERED.**

Dated: October 7, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge