UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CASTILLO,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN,<br><br>        Defendant. | Case No. 14-cv-03140-JCS<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 34 |

## I. INTRODUCTION

Plaintiff Carlos Castillo brought this action challenging the decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security, (the "Commissioner") denying Castillo's application for disability benefits. The Court granted Castillo's motion for summary judgment, denied the Commissioner's motion for summary judgment, and—applying the Ninth Circuit's "credit-as-true" doctrine to Castillo's symptom testimony—remanded the case for an award of benefits. *See generally* Order Granting Pl.'s Mot. for Summ. J. ("S.J. Order," dkt. 20).[1] The Court also denied the Commissioner's motion to alter or amend judgment. *See generally* Order Denying Mot. to Alter or Amend J. ("Reconsideration Order," dkt. 33).[2] Castillo now seeks attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"). For the reasons stated below, Castillo's motion for attorneys' fees is GRANTED IN PART, and Castillo shall recover fees totaling $12,141.74.[3]

---

[1] *Castillo v. Colvin*, No. 14-cv-03140-JCS, 2015 WL 5836784 (N.D. Cal. Oct. 7, 2015). Citations herein to the Court's previous orders refer to page numbers in the versions filed in the ECF docket.
[2] *Castillo v. Colvin*, No. 14-cv-3140-JCS, 2016 WL 1559692 (N.D. Cal. Apr. 18, 2016).
[3] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. 636(c).

## II. BACKGROUND

### A. Medical History and Administrative Hearing Testimony

Castillo's medical history includes evidence of a number of impairments, including hypertension, effects of stroke, obesity, chronic depression, bipolar disorder with psychotic features, and anxiety disorder. *See* S.J. Order at 3. Several medical professionals evaluated Castillo and consistently diagnosed him with bipolar disorder (among other diagnoses), with varying degrees of functional capacity. *See* AR at 306 (diagnosis of Dr. David Star); *id.* at 330 (diagnosis of Dr. Kenneth Visser); *id.* at 530 (diagnosis of Dr. Shana Stowitzky); *see also* S.J. Order at 4−8. The examining doctors assessed Castillo's overall functional limitations as moderate to serious, as indicated by the Global Assessment of Functioning scores that they assigned him. *See* S.J. Order at 4−8 & nn.3, 4. Castillo received treatment at Charlotte Behavioral Healthcare, beginning with a psychiatric evaluation and medication management appointment with Nurse Practitioner Billie Cone in September of 2011. AR at 549−62; S.J. Order at 7−8. Cone and Dr. Katina Matthews-Ferrari signed a letter in June of 2012 stating their belief that Castillo was not mentally or physically capable of working. AR at 565; S.J. Order at 8.

At the hearing before the ALJ, Castillo testified that when he experiences bouts of depression, he stays in his room and does not dress or bathe himself. AR at 66. He experiences such episodes once or twice every two weeks, and stays in his bedroom for up to twenty days at a time. *Id.* at 69−70. Castillo also testified that he experiences anxiety attacks multiple times a week that leave him shaking and require him to step outside for air, triggered by factors including large crowds, small rooms, or sitting still for a long period. *Id.* at 68−72.

A vocational expert testified at the hearing that someone with Castillo's impairments could not perform Castillo's past work as a car salesman. *Id.* at 73−75. In response to the ALJ's hypothetical questions, the vocational expert testified that someone with certain of Castillo's limitations could work as a merchandise marker, mail sorter, or hand packager. *Id.* at 74−75. When the ALJ asked hypothetical questions regarding absences from work, however, the vocational expert testified that the jobs in question would permit at most six or seven absences per year, and that a person who was consistently absent once a month would not be able to maintain

1  employment "at any level." *Id.* at 75.

### B. ALJ's Decision

The ALJ determined that Castillo had a number of cognizable severe impairments including bipolar disorder, *id.* at 21, but held that those impairments did not meet or equal the severity of a listed impairment, *id.* at 22−24, and that Castillo retained sufficient functional capacity to work, *id.* at 24−30. In reaching that decision, the ALJ recited the findings of examining and consulting doctors, as well as Castillo's own reports that he could at times perform basic functions like attending work and watching television. *Id.* at 25−28. Although the ALJ noted that Castillo "understandably may honestly believe that his impairments are disabling," he found Castillo's symptom testimony "not fully credible" and held that "the medical findings do not support" the degree of impairment Castillo claimed. *Id.* at 25. The ALJ did not specifically address Castillo's testimony that his depression would periodically cause him to stay in his room for days at a time. The ALJ did address Nurse Practitioner Cone and Dr. Matthews-Ferrari's opinion that Castillo was unable to work, but held that it was not credible primarily because he determined that they claimed a longer treating relationship with Castillo than the record reflected, the opinion was not consistent with Castillo's activities of daily living, and Dr. Matthews-Ferrari did not specialize in mental health treatment. *Id.* at 28.

### C. Procedural History

Castillo brought this action requesting review of the ALJ's decision. The Court held that the ALJ erred in failing to credit Castillo's symptom testimony under the legal standard established by Ninth Circuit precedent, which provides that a claimant need not present objective medical evidence of the severity of subjective symptoms and requires that, in order to find symptom testimony not credible, an ALJ must specifically identify the testimony at issue and provide clear and convincing reasons why it is not credible. S.J. Order at 24−26. As discussed in more detail in the Court's summary judgment order, the Court determined that the ALJ's decision did not meet that standard. *Id.* The Court went on to hold that under the credit-as-true doctrine, the case should be remanded for benefits, and the Clerk entered judgment in Castillo's favor. *Id.*

at 26−27; Judgment (dkt. 21).[4]

The Commissioner moved for the Court to alter its previous judgment, arguing that substantial evidence supported the ALJ's decision and that the Court applied an insufficiently deferential standard of review and erred in finding the ALJ's analysis insufficient.  *See* Reconsideration Order at 4.  The Commissioner also contended that the Court erred in applying the credit-as-true doctrine because further proceedings were needed to resolve conflicts in the record, and because the record as a whole did not establish that Castillo was disabled.  *See id.*  As discussed in more detail in the Court's order denying that motion, the Court held that the motion was improper because "[a]ll of the Commissioner's arguments either were or could have been presented in the Commissioner's initial response and cross-motion for summary judgment."  *Id.* at 5.  Although that alone was a sufficient basis to deny the motion, the Court went on to determine that there was no manifest error in the initial order because the ALJ failed to identify specific portions of Castillo's testimony that were not credible or clear and convincing reasons to disbelieve him, and because the Commissioner failed to identify evidence sufficient to create serious doubt of disability such that applying the credit-as-true doctrine was inappropriate.  *Id.* at 5−10.  The Court therefore declined to alter the judgment in Castillo's favor remanding the case for an award of benefits.  *Id.* at 10.

### D. Parties' Present Arguments

Castillo initially moved for attorneys' fees under the EAJA while the Commissioner's motion to amend judgment was pending.  *See* dkt. 26.  The Court denied that motion without prejudice to Castillo renewing it after the motion to amend judgment was resolved.  *See* dkt. 31.  Castillo has now done so.  *See generally* Mot. (dkt. 34).

Castillo argues that he is entitled to attorneys' fees at the statutory rate of around $190[5] per

---

[4] The Court declined to reach other potential errors in the ALJ's decision, but noted that two of the ALJ's primary reasons for discrediting Nurse Practitioner Cone and Dr. Matthews-Ferrari's opinion were not supported by the record.  Order at 17 n.6.

[5] The statutory rate is adjusted for increases in the cost of living, resulting in rates of $190.06 per hour in 2014, $190.28 per hour in 2015, and $191.70 per hour for the first half of 2016. *Statutory Maximum Rates Under the Equal Access to Justice Act*, http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (accessed Oct. 3, 2016).

hour for all work performed up to the entry of judgment, and at the prevailing market rate—which he contends is $650 per hour—for work performed after the Commissioner moved to alter or amend judgment. *Id.* at 4. According to Castillo, the market rate is warranted because the Commissioner moved to amend judgment in bad faith, "solely to delay the payment of benefits." *Id.* at 5, 7; Reply at 3−4. Castillo's counsel offers, however, to donate the difference between the statutory fees and the market rate to a nonprofit devoted to legal assistance for the elderly, "[i]n order to avoid any violation of Congressional policy and the enrichment of Plaintiff's Counsel." Mot. at 4−5; Reply at 4 & n.2.

The Commissioner does not dispute that Castillo is entitled to attorneys' fees for work related to bringing this action, obtaining summary judgment, and successfully opposing the Commissioner's motion to amend judgment. Opp'n (dkt. 35) at 3−4. The Commissioner also acknowledges that courts have recognized a common law exception to the EAJA's statutory cap on rates for attorneys' fees where a litigant demonstrates bad faith by the government, but argues that the circumstances here do not resemble cases where courts have found bad faith, and that Castillo has no bases for arguing that the Commissioner brought her motion in bad faith. *Id.* at 3. The Commissioner therefore contends that attorneys' fees should be awarded only at the statutory rate, rather than the higher market rate, and that Castillo should not recover any fees for time spent bringing his present motion because it was not reasonable to do so. *Id.* at 3−4.

The parties' briefs address a number of other issues that are not in dispute, such as whether the Commissioner can show that her position was substantially justified (the Commissioner makes no such argument), and whether an award of fees should be directed to Castillo or his counsel (Castillo's counsel does not dispute that the award should be to Castillo, and his assignment of fees to counsel should only be considered if Castillo is not indebted to the government such that an award would be subject to offset). *See, e.g.*, Mot. at 6−7; Opp'n at 4−5; Reply (dkt. 36) at 2. Because the parties are fundamentally in agreement on such issues, this Order need not address them in detail.

### III. ANALYSIS

#### A. Legal Standard

The EAJA provides that "a court shall award to a prevailing party . . . fees and other expenses incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "Although a plaintiff seeking fees under the EAJA must allege that the government's position was not "substantially justified," it is the government's burden to establish that the position of the United States was substantially justified." *Nguyen v. Astrue*, No. 10-4807 JCS, 2012 WL 4482585 (N.D. Cal. Sept. 28, 2012) (citing *Scarborough v. Principi*, 541 U.S. 401, 414 (2004)).

Fees awarded under the EAJA are normally capped at $125 per hour plus any additional amount warranted by increased cost of living. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has determined that the following rates are appropriate based on changes in the cost of living: $190.06 per hour for work performed in 2014, $190.28 per hour for work performed in 2015, and $191.70 per hour for work performed in the first half of 2016. *Statutory Maximum Rates Under the Equal Access to Justice Act*, http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (accessed Sept. 30, 2016).

#### B. Castillo Has Not Demonstrated Bad Faith

In addition to its grant of statutory-rate fees, the EAJA also provides that the United States may be held liable for attorneys' fees "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). As is relevant here, the common law authorizes courts to impose an opponent's attorneys' fees on "a losing party that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "[A] finding that the government acted in bad faith permits a market-rate recovery of attorney's fees," as opposed to the statutory rate normally available under the EAJA. *Ibrahim v. U.S. Dep't of Homeland Sec.*, __ F.3d __, No. 14-16161, 2016 WL 4527560, at *6 (9th Cir. Aug. 30, 2016) (citing *Brown v.*

1   *Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990)).

> Under the common law, "[a] finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997) (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir.1996)). Mere recklessness does not alone constitute bad faith; rather, an award of attorney's fees is justified when reckless conduct is "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir.2001). "A frivolous case is one that is groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant. The case is frivolous when the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous." *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir.2003) (citation and internal quotations omitted).

*Rodriguez*, 542 F.3d at 709−10. Conduct may be "unreasonable" and yet fall short of the bad faith necessary for awarding market rate fees. *See Brown*, 916 F.2d at 495 ("However, we also held that bad faith cannot be based on a finding that the government unreasonably implemented and defended the Bellmon program 'without any further showing of vexatious or oppressive conduct.'" (quoting *Barry v. Bowen*, 825 F.2d 1324, 1334 (1987)).

Castillo cites only one social security disability case where a court awarded market rate attorneys' fees based on the Commissioner's bad faith: *Brown v. Sullivan*, 916 F.2d 492. *See* Mot. at 7; *see also* Reply (citing no cases where courts awarded market rate attorneys' fees). The Ninth Circuit determined in that case that the Commissioner's conduct warranted an award of market rate attorneys' fees where the Appeals Council affirmed a denial of disability benefits without fulfilling its statutory duty to review the complete record, inaccurately claimed that a recording was inaudible after the district court ordered the Council to review it, and failed to produce a transcript within the time ordered by the court, and the Commissioner also caused delays in the claimant's efforts to review documents in the Commissioner's possession. *Brown*, 916 F.2d at 496.

Here, Castillo points to the following conduct as evincing bad faith by the Commissioner: (1) filing an ultimately unsuccessful motion to alter or amend judgment, Mot. at 2−3; (2) failing to notice that motion for a hearing, *id.* at 2; (3) indicating that Castillo's benefits would not be

7

1    processed until 60 days after the Court denied the motion to amend judgment, *id.* at 3; and
2    (4) moving to stay the initial judgment while the motion to amend judgment was pending, without
3    noticing the motion to stay for a hearing, *id.* at 4.
4          The Court previously addressed the Commissioner's failure to notice her post-judgment
5    motions for hearings and held that such practice is within the spirit of Civil Local Rule 16-5,
6    which "sets a general policy against oral argument in cases based on review of an administrative
7    record," even if that rule is "perhaps not technically applicable to post-judgment motions." Dkt.
8    31 at 2. Given the general policy of the local rules, the failure to notice motions in this action for a
9    hearing is not indicative of bad faith. As for the assertion that benefits would not be paid for sixty
10   days, Castillo offers no evidence—as opposed to argument—that the Commissioner made any
11   such representation, and has not addressed whether such a timeline is consistent with the
12   Commissioner's usual practice when courts remand actions for an award of benefits. *See* Mot. at
13   3. This too does not demonstrate bad faith. And to the extent that Castillo bases his argument on
14   the Commissioner's motion to stay judgment, *see* Mot. at 4, the Court granted that motion at the
15   time and finds no basis to alter its conclusion that staying judgment was appropriate while the
16   motion to amend judgment was under consideration.
17         The heart of Castillo's present motion is his position that the Commissioner lacked a
18   reasonable basis to move to alter judgment, and instead did so solely to delay payment of benefits.
19   *See id.* at 2−3; Reply at 3−4. This is a closer question. As stated in the Court's previous order
20   denying the motion to alter judgment, that motion fell far short of the standard required for the
21   "extraordinary remedy" of amending judgment, in that the Commissioner presented only
22   arguments that either had already been raised and litigated or could have been raised prior to entry
23   of judgment. Reconsideration Order at 5. On the other hand, even if the decision to bring that
24   motion was unreasonable, that alone is not sufficient for a finding of bad faith. *See Brown*, 916
25   F.2d at 495. The Court agrees with the Commissioner that her conduct here does not resemble the
26   conduct at issue in *Brown*, and the Court is not persuaded that the Commissioner based her motion

on a vexatious motive to delay payment rather than genuine but misplaced belief in its merit.[6] Accordingly, the Court holds that Castillo has not met his burden to demonstrate bad faith and declines to award fees in excess of the EAJA statutory rate.

### C. Castillo Is Entitled to Fees for His Present Motion

The Commissioner argues that Castillo should not recover attorneys' fees related to bringing his present motion because he "has no basis for his argument" regarding market rate fees, and because fees accrued preparing the present motion are therefore unreasonable. Opp'n at 3−4. In light of the Commissioner's clear failure to meet the standard to amend judgment as described by the Supreme Court in *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), the Court holds that Castillo's argument for market rate fees, while unsuccessful, was not unreasonable. *See* Reconsideration Order at 5. Moreover, although the Commissioner does not presently oppose Castillo's request for statutory attorneys' fees accrued prior to bringing the present motion, there is no evidence that the Commissioner offered or agreed to pay such fees before the motion was filed, or in other words, that Castillo could have recovered them without motions practice. The Court therefore finds no basis to exclude work related to the present motion from Castillo's award of statutory fees under the EAJA.

### D. Castillo's Recoverable Fees Total $12,141.74

The Court has reviewed the hours itemized in Castillo's counsel's declarations and finds them to be reasonable. Based on the itemized lists attached to those declarations, Castillo's counsel spent 14.3 hours on the case in 2014, 30.9 hours in 2015, and 21.1 hours in 2016, for a total of 66.3 hours. Weathered Decl. (dkt. 34-1) Ex. 1; Weathered Reply Decl. (dkt. 36-1) Ex. 1. At hourly rates for each year of $190.06, $190.28, and $191.70, respectively, the fees recoverable under the EAJA would total $12,642.38. However, because Castillo's reply brief[7] requests

---

[6] Castillo inaccurately implies that the Commissioner's motion for reconsideration was based largely on arguments "to overturn almost 30 years of Ninth Circuit precedent merely because of the alleged inconvenience of the 'credit as true' rule." *See* Reply at 3. The Commissioner preserved her longstanding objection to that rule, but the focus of her argument was that the Court had applied the rule incorrectly. Although the Court held that such contentions were both unavailing and misplaced in a Rule 59(e) motion, they were not so frivolous as a direct request for this Court to disregard binding precedent.

[7] Castillo's reply requests a slightly higher award than what is included in his motion to account

reimbursement of only 63.3 hours and $12,141.74 (if the Court rejects, as it has, Castillo's request for market rate fees), *see* Reply at 4, and the Commissioner had no occasion to oppose a larger request for EAJA fees, the Court awards fees in that amount.

## IV. CONCLUSION

For the reasons discussed above, Castillo's motion is GRANTED IN PART, and the Commissioner is ORDERED to pay Castillo's reasonable attorneys' fees of $12,141.74. The parties appear to be in agreement regarding the significance of both Castillo's assignment of fees to his attorney and any possible offsetting debts to the United States. *See* Opp'n at 4−5; Reply at 2. If any disputes remain regarding those issues and the method of payment, the parties are instructed to meet and confer to resolve them.

**IT IS SO ORDERED.**

Dated: October 3, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

---

for 6.9 hours spent reviewing the Commissioner's opposition and preparing the reply. *See* Reply at 4; Weathered Reply Decl.; *see also* Mot. at 8 (stating that updated time records would be included with the reply).